STATE of Missouri, Respondent,

v.

William O. McVAY, Appellant.

William O. McVAY, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 60027, 62185.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 4, 1993.

Raymond Legg, J. Gregory Mermelstein, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joan F. Gummels, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, William O. McVay, appeals from a jury verdict entered in the Circuit Court of Knox County convicting him of one count of first degree sexual assault, RSMo § 566.040 (1986); four counts of second degree deviate sexual assault, RSMo § 566.080 (1986); and one count of first degree deviate sexual assault, RSMo § 566.070 (1986). We affirm.

The evidence, as adduced at trial, established that on the evening of September 10, 1990, appellant informed his wife that he was heading to the home of Darrel Hamilton to borrow money. Appellant told M.M., his sixteen year old daughter, that he wanted her to ride with him so they could discuss some problems she was having with her boyfriend.

However, instead of driving to Hamilton's home, appellant stopped at an abandoned house which Darrel Hamilton owned. Appellant ordered M.M. into the house. Once inside, appellant led M.M. into a side room and instructed her to lay on some feed sacks and take off her clothes. When M.M. refused, appellant ordered her to "take off [her] fucking clothes." M.M. complied.

Appellant undressed as well, then knelt down and began to fondle M.M.'s breasts as he placed his tongue into her vagina.

Appellant continued his assault and attempted to have sexual intercourse with M.M. When M.M. tried to get up, appellant grabbed her arm and forced her back down. Appellant again tried to penetrate his daughter's vagina with his penis. M.M. slapped appellant's face and got up off the feed sacks. M.M. dressed to return to the car. She told appellant he should come out when he was ready.

Testimony at trial revealed that appellant began sexually assaulting M.M. sometime between her ninth and twelfth birthday. The assaults began with appellant's fondling of M.M.'s breasts and vagina, gradually becoming more intrusive with appellant performing oral sex on M.M. and placing his mouth on her breasts. M.M. testified that appellant began to have sexual intercourse with her when she was only ten years old. Additionally, her testimony indicated that in April or May of 1990, M.M. was forced to perform oral sex with her father.

On September 11, 1990, the day following the assault at the abandoned house, M.M. took a bag of clothes with her to school. After speaking with a school counselor and the school nurse, M.M. decided to run away.

Around midnight on September 13, 1990, Deputy Sheriff Michael Small, Chief Juvenile Officer Mike Waddle, and Deputy Sheriff Gene Lewis drove to appellant's home to question him regarding M.M.'s allegations of abuse. Shortly after the knock at the door, appellant answered, looking as though he had been sleeping. When appellant was advised he needed to accompany the officers to the Sheriff's department to discuss M.M., appellant agreed.

Appellant was taken, without handcuffs, to the local Sheriff's Department. On the way, he asked what was going on, but was advised not to speak until they arrived at the office and had the opportunity to go over a form. Upon their arrival, Deputy Sheriff Small covered each of the items on

a *Miranda*[1] form with appellant, and appellant initialed each line.

Appellant gave a verbal confession at approximately 1:15 a.m., confirming much of what M.M. had alleged. Subsequently, appellant was charged with one count of first degree sexual assault, four counts of second degree deviate sexual assault, one count of first degree deviate sexual assault, and one count of attempted rape. The cause proceeded to trial on February 26, 1991. Appellant was found guilty on Counts I–VI, and not guilty of Count VII, the attempted rape count. Appellant was sentenced to consecutive terms of seven years' imprisonment on the charge of first degree sexual assault, five years' imprisonment for each conviction of deviate sexual assault in the second degree, and seven years' imprisonment for deviate sexual assault in the first degree.

A Rule 29.15 *pro se* motion was filed by appellant on May 15, 1991. Upon appointment of counsel, an amended motion was filed on October 18, 1991. An evidentiary hearing was held on March 20, 1992. On May 7, 1992, the motion court issued findings of fact and conclusions of law denying appellant's motion for postconviction relief. This consolidated appeal ensued.

■ Appellant raises seven points on appeal. First, appellant asserts the trial court erred by denying appellant's motion for a continuance to obtain the presence of Dr. Nancy Hutchinson to testify on appellant's behalf. Appellant argues the testimony of Dr. Hutchinson was material to appellant's case in that it would have proven M.M. had not engaged in sexual intercourse with appellant or anyone before March 14, 1989.

Appellant's argument here is based on the fact that in a pretrial deposition, M.M. stated that between 1987 and 1989, when she was between the ages of 13 and 15, appellant engaged in sexual intercourse with her, involving full penile penetration. Dr. Hutchinson would have provided testimony to the effect that during a March 14, 1989, pelvic examination of M.M., Dr. Hutchinson found M.M. to demonstrate an intact hymenal ring which barely admitted the doctor's index finger.[2] As such, Dr. Hutchinson found no evidence that M.M. had engaged in sexual intercourse before March of 1989. Appellant contends this evidence goes to the very heart of the case before us: the credibility of M.M. as a witness.

■ The decision to grant a continuance is within the sound discretion of the trial court, *State v. Griffin*, 818 S.W.2d 278, 282 (Mo. banc 1991), and absent a strong showing of abuse, such a decision will not be reversed on appeal. *State v. Fuller*, 837 S.W.2d 304, 307 (Mo.App., W.D. 1992). The party requesting the continuance bears the burden of establishing both an abuse of discretion and any prejudice resulting from the denial of the request. *Id.* Moreover, no error will be found based on the denial of a continuance which is requested to secure an absent witness whose purported testimony would not bear directly on the innocence or guilt of the accused. *State v. Petterson*, 780 S.W.2d 675, 679 (Mo.App., W.D.1989).

We find no error here. The testimony of Dr. Hutchinson was not sought to establish the innocence of appellant. Rather, appellant simply hoped to utilize the findings of Dr. Hutchinson to show that full penile penetration of M.M. had not occurred before March 14, 1989. Because this testimony was not material to appellant's guilt or innocence, and because the request for a continuance was not made until the day of trial, we find the trial court acted within its discretion in denying appellant's motion for a continuance. Point denied.

■ For his next point, appellant finds error in the motion court's denial of his Rule 29.15 motion alleging ineffective assistance of counsel based on the defense

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Dr. Hutchinson did testify at appellant's post-conviction relief hearing and established at that time what her testimony during trial would have been.

attorney's failure to subpoena or depose Dr. Nancy Hutchinson.

■ Our review here is limited to a determination as to whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j); *Day v. State*, 770 S.W.2d 692, 695 (Mo. banc 1989). In addition, to establish a claim of ineffective assistance of counsel, a defendant must show: 1) that his attorney was remiss in exercising the customary skill and diligence of a reasonably competent attorney under similar circumstances, and 2) that defendant was thereby prejudiced. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). Both prongs must be satisfied, and the court is free to examine the prejudice prong first. *Id.*

■ Prejudice must be affirmatively proved; it will not be presumed from a showing that counsel was deficient in his performance. *State v. Stepter*, 794 S.W.2d 649, 656 (Mo. banc 1990). With this in mind, we find no prejudice here. As stated previously, the proffered testimony of Dr. Hutchinson was immaterial as it would have had no effect in establishing the guilt or innocence of appellant. It was intended merely to place the credibility of M.M. in question. Such impeachment evidence is insufficient to support a claim of ineffective assistance of counsel. *State v. Twenter*, 818 S.W.2d 628, 643 (Mo. banc 1991). Point denied.

For his third point, appellant alleges the trial court erred in overruling his motion to suppress the incriminating statements he made the morning of his arrest. Appellant supports this contention by suggesting the interrogators utilized psychological and emotional coercion to force appellant into a confession by referring to M.M.'s need for help and treatment. Additionally, appellant claims he made equivocal requests for counsel which the interrogators failed to clarify.

■ We review a trial court's ruling on a motion to suppress by viewing the facts and reasonable inferences therefrom in the light most favorable to the ruling of the lower court, disregarding all evidence and inferences to the contrary. *State v. Bittick*, 806 S.W.2d 652, 654 (Mo. banc 1991). If there is evidence to sustain the findings of the trial court, we will do so. *Id.* The State bears the burden of showing the voluntariness of the confession, and the test here is "whether under the totality of the circumstances defendant was deprived of a free choice to admit, to deny, or to refuse to answer, and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed." *State v. Feltrop*, 803 S.W.2d 1, 12 (Mo. banc 1991) (citations omitted).

■ We find no evidence to support appellant's contention. The entire interrogation process, from the time the officers picked appellant up at his house until the time of the confession lasted only slightly more than an hour. Appellant exhibited no signs of intoxication, remained without handcuffs during the entire procedure, and was offered coffee and allowed use of the restroom facilities. There was no evidence of threats or promises having been used during the interrogation. Additionally, the officers refused to discuss the situation with appellant until they arrived at the Sheriff's Department and had an opportunity to review his *Miranda* rights with him. Appellant indicated he understood these rights, initialed each line on the form indicating as such, and signed the notification of waiver of these rights.

■ Appellant contends his request to speak to his wife and a statement that he could not afford a lawyer were equivocal requests for legal representation which required clarification by the interrogating officers. We find it a far stretch to suggest that appellant's request to see his wife was really a request for counsel and refuse to regard it as such. As to appellant's second alleged equivocal statement, the State cites us to *State v. Reese*, 795 S.W.2d 69 (Mo. banc 1990), in rebuttal. In *Reese*, the defendant had completed the public defender form and had indicated on the form he was requesting that a public defender be provided. *Id.* at 71. The Supreme Court determined that the police officer's

subsequent questioning and defendant's resulting confession were proper under the circumstances. *Id.* at 73–74. Defendant had never specifically requested that counsel be appointed and had actually signed a waiver of his rights. *Id.* at 73. The court went on to conclude "[t]he mere mention of counsel by the defendant is not sufficient to preclude further police questioning." *Id.*

Comparing the facts from *Reese* to the situation before us, we find appellant's mere mention of counsel insufficient to rise to the level of a request. Additionally, we fail to find any hint of emotional or psychological coercion in the officers' statements to appellant that M.M. needed treatment and help. Appellant contends the officers attempted to overcome his "nature [sic] desire to protect himself by concentrating on appellant's parental duty to help his daughter." Considering the facts before us, we find this statement ludicrous. We perceive no error in the trial court's actions overruling appellant's motion to suppress. Point denied.

■ Point four of appellant's brief alleges error on the part of the trial court for failure to grant appellant's motion for acquittal on Count III at the close of evidence. According to appellant, the State did not present any independent proof of appellant's criminal agency to corroborate appellant's confession of deviate sexual assault in the second degree.

Both parties refer us to *State v. Benton,* 812 S.W.2d 736 (Mo.App., W.D.1991) to provide us with the accepted rule of law whereby absent independent proof, circumstantial or direct, of the *corpus delicti,* a defendant's extrajudicial confession will not be admissible. *Id.* at 740.

Appellant's written confession stated that he had had oral sex with M.M. on two occasions in August of 1990. On direct examination, M.M. testified that although she was sure she and her father had engaged in oral intercourse in August of 1990, she was unsure as to how many times. On cross-examination, M.M. recalled that she had previously testified to

one occurrence of oral sex in August of 1990, stating:

Now that you mention it, yeah, I do recall it. But I mean, what do you expect from a 16–year–old girl that's under oath and everything else in front of 12 people they don't even know. I'm scared to death....

■ Full proof of the corpus delicti, independent of the confession, is not necessary. *State v. Charity,* 587 S.W.2d 350, 353 (Mo.App., S.D.1979). Only slight corroborating facts are required to confirm the corpus delicti. *Id.*

Appellant confessed, and M.M. testified, to a history of sexual abuse involving appellant and M.M. This history, as well as M.M.'s testimony that oral sex did occur in August, 1990, on at least one occasion, are sufficient to establish the *corpus delicti.* Appellant's confession was properly admitted and the motion for acquittal on Count III properly denied. Point denied.

■ For his fifth point, appellant claims this cause should be remanded to the circuit court for a new trial as a full and complete transcript of the motion to suppress hearing is unavailable. Appellant asserts that because a full transcript is unavailable, this court has nothing to consult to determine whether the denial of appellant's motion to suppress was erroneous.

■ It is the rule in Missouri that appellant carries the responsibility of providing this court with a full record for our review. Rule 30.04; *State v. Adell,* 716 S.W.2d 469, 471 (Mo.App., E.D.1986). However, where an appellant is unable to obtain a complete and accurate copy of the trial and/or motion court transcripts, despite his due diligence in attempting to do so, a reversal will not be required unless appellant can show he has been prejudiced by the incompleteness of the record. *State v. Fults,* 719 S.W.2d 46, 48 (Mo.App., E.D. 1986).

Although a partial transcript of the motion to suppress hearing has been supplied, the tape recording of the remaining segment has apparently been lost and is unavailable for transcription. Our review of

the record persuades us that appellant went to great lengths to track down the missing tape. Numerous letters were sent in this effort. Motions for extensions of time for the filing of the record were submitted to the court. However, the missing tape has not turned up.

Appellant suggests he has been prejudiced by the unavailability of the partial motion to suppress transcript. He argues that without the transcript, he has nothing to review for errors on the part of the motion court. However, appellant admits that the majority of the evidence presented at the hearing has been transcribed. Though the cross-examination of appellant's wife, Marilyn McVay, is unavailable, appellant also admits defense counsel was able to recall that the questioning and testimony concerned appellant's state of intoxication and previous states of intoxication.

Because the majority of the motion to suppress hearing is available to this court and the parties, and because appellant has failed to show specifically how he has been prejudiced by the incomplete record, we find no basis to remand this case for a new trial. *See, Adell,* 716 S.W.2d at 471; *Fults,* 719 S.W.2d at 48–49. Point denied.

▮▮▮ Next, appellant contends the motion court erred in denying his Rule 29.15 motion claiming ineffective assistance of counsel because appellant's defense attorney failed to utilize witnesses Alice West, Carolyn Wood, and Laura West at the suppression hearing and trial. Appellant argues that the witnesses would have testified appellant was extremely intoxicated the day he made his confession and this evidence would have gone to the voluntariness of his confession.

As previously stated, to prevail on a claim of ineffective assistance of counsel, appellant must establish his attorney failed to use the customary skill a reasonably competent attorney would have used in similar circumstances, and prejudice thereby. *Sanders,* 738 S.W.2d at 857. We review the prejudice prong first and find no evidence of prejudice. Even if the three potential witnesses had been called and testified as to appellant's state of intoxication

the day of his confession, there was testimony by the interrogating officers that appellant appeared sober, did not stagger, had no slurred speech, and did not smell of alcohol when he was picked up. Additionally, proof of intoxication at the time of the confession does not translate into an involuntary confession unless the intoxication rises to a mania. *State v. Rowe,* 806 S.W.2d 122, 127 (Mo.App., E.D.1991). Point denied.

For his last point, appellant finds error on the part of the motion court for denying his Rule 29.15 motion in that trial counsel was allegedly ineffective for failing to object to various statements made by a variety of individuals at trial. We reiterate that to prevail here, appellant must show he was prejudiced by his counsel's failure to act as a reasonably competent attorney would have acted in similar circumstances. *Sanders,* 738 S.W.2d at 857. Both the prejudice and failure to act prong must be satisfied. *Id.*

▮▮▮ Appellant first complains his defense attorney should have objected to the State's questioning of M.M. as to how she felt about herself and appellant as a result of the abuse. We note it is a presumption that a failure to object to a line of questioning is trial strategy. *Walls v. State,* 779 S.W.2d 560, 562 (Mo. banc 1989). Additionally, we find no prejudice to appellant based on this line of questioning. To establish prejudice, appellant must show a different result would have been reached but for the errors of trial counsel. *Sanders,* 738 S.W.2d at 860. Based on the evidence adduced at trial, coupled with appellant's confession, we find the evidence of appellant's guilt so overwhelming that even absent the questions complained of, the resulting verdict would have been the same.

▮▮▮ Appellant next argues that defense counsel should have objected to the testimony of Officer Small concerning what M.M. told him about appellant's sexual acts. Appellant argues that this testimony constituted hearsay. Additionally, appellant points out that pursuant to a motion in

limine, testimony as to M.M.'s prior statements was to be excluded.

The testimony appellant has complained of included the following:

Q. Okay. What did Mr. McVay tell you during the interview? ...

A. He said—He told us that—I remember one of the particular things I was looking for, [M.M.] used an expression in her interview of "being eaten out." ...

Bill told us that he had "eaten her out." And I knew when I heard that, the terminology was the same ...

Q. Okay. Did he describe the acts that occurred on the 10th of September of 1990 to you?

A. Yes, he did.

Q. What did he tell you about those acts?

    \*    \*    \*    \*    \*    \*

A. ... that he had been drinking that night. And he took her inside of an abandoned house owned by Darrell Hamilton, took her into a room where hay had been storing—stored, and there was feed sacks in there, and he had laid her down on the feed sacks.

[M.M.] had told us that he had taken her in there, had her take her clothes off. He had fondled and sucked on her breasts, had "eaten her out," was her terminology. And he said he had done that, also.

Q. Okay. Mr. McVay was describing those events?

A. Mr. McVay.

Q. And what—How was he describing those events that happened at the—

A. As she had. He said he had "played with her in her private area," and sucked her breasts. And he had had oral sex with her. And [M.M.] said that he got mad when he—she wouldn't—didn't want to have intercourse with him. And she—

Q. Did Mr. McVay ever mention that to you?

A. Yeah. He said that—He told us that she had slapped at him, I think is what he said. And she said that when

she stood up he grabbed her by the arm and forced her down on the sacks.

Q. What did Mr.—Did Mr. McVay ever mention that to you?

A. I believe his statement to us was, that he had not had to force her down, had held her down, or something similar to that.

As pointed out in respondent's brief, at no point during the examination of Officer Small was Small specifically asked about statements made by M.M. Instead, it was Small who interjected M.M.'s statements into his explanation of appellant's confession in an effort to compare the two accounts. To determine whether counsel's performance was inadequate, we must inquire as to whether the assistance provided was reasonable considering the circumstances. *Walls,* 779 S.W.2d at 562. As such, we find no error here on the part of defense counsel. Officer Small was not questioned regarding M.M.'s statement to him. While Small was on the stand, counsel continually attempted to lead him back to the discussion of appellant's confession and away from a discussion of M.M.'s accounting of the September 10th incident. Finally, as noted above, it is presumed that a failure to object was trial strategy. *Walls,* 779 S.W.2d at 562. Therefore, we find no evidence of ineffective assistance of counsel relating to defense counsel's decision not to object to the testimony of Officer Small.

■ For his last claim of error, appellant contends counsel should have objected to statements made by the court during sentencing. The portion of the sentencing proceeding which appellant claims to have been objectionable stated as follows:

The Court has pondered and considered to what ends justice might be served in having the defendant serve all six of these separate findings of guilt and punishment concurrently or consecutively. The Court has considered the fact that he is a father and has three children still in the home, that he is a married person, and the Court has tried to weigh that against the acts which the State has proven to the satisfaction of this jury

and to this Court. The particular crimes charged against the defendant are undoubtedly the most repulsive crimes in a civilized society. Very few animals of the lower order than the human species have sex with their children or their offspring. I doubt there is many juries anywhere on the planet Earth, from darkest Africa to the most civilized European nations, that can tolerate conduct of the father which was testified to and heard by this jury in Knox County. I feel because of the acts, because of the age of the victim, because of the relationship, because of the cavalier position that the defendant has maintained during the presentencing—as indicated in the presentence, that the ends of justice would best be served by each of these separate counts of guilt running consecutive with each other.

■ We find no prejudice in the comments of the court. The court was addressing the nature of the crime in general rather than indicating a direct animosity toward the defendant. *See, U.S. v. Nelson,* 952 F.2d 180, 181 (8th Cir.1991). Additionally, error will not found unless there is evidence of prejudice to such an extent that it can be assumed appellant did not receive a fair adjudication. *State ex rel. Wesolich v. Goeke,* 794 S.W.2d 692, 698 (Mo.App., E.D.1990). We find no such evidence here. Point denied.

Based on the foregoing, the decision of the trial court is affirmed.

SMITH and STEPHAN, JJ., concur.